**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAN JIN,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>　　　　　　Respondents. | Case No. 5:26-cv-01648-MAA<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 3) AND GRANTING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1)** |

On April 3, 2026, Petitioner, represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition") against Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS"); DHS; and the Warden of the Desert View Annex ("Respondents").  (Pet., ECF No. 1.)  The Petition alleges that Petitioner, a citizen of China, entered the United States through its border with Mexico on September 16, 2024 and was thereafter released on his own recognizance by DHS on September 17, 2024, under an Order of Release on Own Recognizance ("OREC").  (Pet. ¶ 1[1]; ECF No. 1-1.)  The Petition further alleges that, despite complying with the terms of his release, Petitioner was subsequently

---

[1] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents

detained during a routine check-in with Immigration and Customs Enforcement ("ICE") on June 16, 2025, without prior notice or justification. (*Id.*) Petitioner remains in ICE custody and is being held at the Desert View Annex facility in Adelanto, California. (*Id.* at ¶ 4.)

Petitioner seeks immediate release from custody, as "the constitutional violations in this case, including the lack of pre-deprivation notice or individualized review before Petitioner's arrest . . . cannot be remedied by a post-deprivation hearing." (*Id.* at ¶ 2.) Petitioner challenges his detention on three grounds: (1) 8 U.S.C. § 1226(a); (2) the Fifth Amendment Due Process Clause; and (3) the Suspension Clause. (Pet. ¶¶ 27–37.)

The parties having consented to proceed before a magistrate judge for all purposes, the case was assigned to the undersigned on April 4, 2026. (ECF No. 6.)

## I.    MOTION FOR TEMPORARY RESTRAINING ORDER

Concurrently with the Petition, Petitioner filed a Motion for Temporary Restraining Order ("Motion"). (Mot., ECF No. 3.) The Motion also seeks Petitioner's release from custody. (Mot. 9.) In addition, the Motion requests that Respondents be enjoined from "removing the Petitioner from the United States or transferring him outside the jurisdiction of the Los Angeles Field Office of [ICE] pending adjudication" of his Petition. (Mot. 1.)

This case is governed by this Court's General Order No. 26-05. Notice of this General Order was served on the parties here on April 4, 2026. (ECF No. 7.) The General Order sets forth a standard, expedited briefing schedule for all habeas corpus petitions seeking "immigration-related relief," which will govern unless modified by the assigned judge. (*Id.* at 3, 5.) This default schedule is designed to provide expedited review of immigration-related habeas petitions and requires that a response to a petition be filed within seven days of issuance of the scheduling notice in a case. (*Id.*) The General Order provides that if "any party seeks to

2

accelerate or extend the briefing schedule, the parties shall promptly meet and confer," then "file a stipulation or a joint statement that contains the parties' competing proposals for a briefing schedule." (*Id.*) Further, the General Order also states:

> The standard scheduling order is intended to provide a prompt resolution to habeas petitions and reduce the contemporaneous filing of applications for a temporary restraining order. Applications for temporary restraining orders should be reserved for cases where the petitioner alleges imminent, irreparable harm that cannot be addressed by the standard scheduling order or by expediting the briefing schedule.

(*Id.*) Finally, the General Order provides that, "[d]uring the pendency of an [sic] § 2241 Immigration Petition, the government shall provide at least two court days' notice to the petitioner, his or her counsel, and the Court of its intent to remove the petitioner from the Central District of California." (*Id.* at 6.)

In the Motion, Petitioner generally alleges imminent, irreparable harm; however, Petitioner has not argued that the default briefing schedule set forth in the General Order is not sufficiently expedited to address this harm, especially in light of the requirement that Respondents provide advance notice of any intent to remove Petitioner from this Court's jurisdiction. Further, as the Court is now in a position to rule on the merits of the case, any question of preliminary relief effective solely during the pendency of the case is now moot. Accordingly, the Court DENIES the Motion.

## II.    WRIT OF HABEAS CORPUS

### A.    Legal Standard

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities. 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus" extends to individuals "in custody in violation of the Constitution or

3

laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas"). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

As the Supreme Court has repeatedly held, under most circumstances, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (collecting cases). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Thus, while "in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the

4

government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id.* (alterations in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  The liberty of a person who has been released from government custody is valuable and falls within the protection of the Due Process Clause.  *Morrissey*, 408 U.S. at 482; *Pinchi*, 792 F. Supp. 3d at 1032.

Courts generally apply the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect a liberty interest.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) ("assuming without deciding" that *Mathews* applied and applying test in immigration detention context); *Pinchi*, 792 F. Supp. 3d at 1033, 1033 n.2 (discussing Ninth Circuit's treatment of *Mathews*); *Perez Bueno v. Janecka*, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (applying *Mathews* test and ordering immediate release of noncitizen asylum applicant previously released on own recognizance by DHS who was detained again without pre-detention notice or hearing).  The *Mathews* Court stated:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews*, 424 U.S. at 335.

**B.     Discussion**

On April 13, 2026, Respondents filed a Response to the Petition, which acknowledges that Petitioner seeks release from custody and states that

5

"Respondents are not presenting an opposition argument at this time."  (ECF No. 9, at 2.)  Petitioner filed his Traverse noting Respondents' non-opposition on April 14, 2026.  (ECF No. 10.)

It thus appears, from the uncontested record before the Court, that:

1) Petitioner had a substantial private liberty interest in remaining out of custody;
2) The risk of erroneous deprivation of this liberty interest was high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker; and
3) No countervailing government interest has been identified that could outweigh the need to protect Petitioner's liberty interest with a pre-deprivation hearing.

The Due Process Clause therefore entitled Petitioner to notice and a hearing *prior* to any re-arrest or detention.  As no such process was provided prior to his June 16, 2025, re-detention, that re-detention violated the Due Process Clause.

As many other courts have held in recent months, the appropriate remedy for such a violation is to place Petitioner in the position he was in prior to the violation—that is, he should be released from custody under the same conditions that governed his prior release.  *E.g.*, *Perez Bueno*, 2026 WL 309934, at *4; *Garcia-Henriquez v. LaRose*, No. 3:26-CV-00249-RBM-BJW, 2026 WL 323328, at *3 (S.D. Cal. Feb. 6, 2026); *Solano v. Robbins*, No. 1:25-CV-01823-EPG-HC, 2025 WL 3718831, at *10 (E.D. Cal. Dec. 23, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).  Thus, as Petitioner has shown that his due process rights were violated and Respondents have not opposed his claim for immediate release, the Court GRANTS the Petition.

## III.    CONCLUSION

IT IS THEREFORE ORDERED THAT Respondents must release Petitioner from custody within 24 hours of entry of this Order and must file a Notice of Compliance, notifying the Court that Petitioner has been released, no later than

three calendar days from the date of this order.  Upon receipt of the Notice of Compliance, the Court will enter judgment accordingly.

DATED: April 15, 2026

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

7